IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| S.O.I.TEC SILICON ON INSULATOR TECHNOLOGIES, S.A. and COMMISSARIAT À L'ÉNERGIE ATOMIQUE,<br><br>        Plaintiffs,<br><br>   v.<br><br>MEMC ELECTRONIC MATERIALS, INC.,<br><br>        Defendant. | Civil Action No. 1:08-cv-292-SLR |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

July 9, 2008

Patricia S. Rogowski (I.D. #2632)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
(302) 658-5614 (Fax)
progowski@cblh.com

*Attorneys for MEMC Electronic Materials, Inc.*

**OF COUNSEL:**
Robert M. Evans, Jr. *(Of the Missouri Bar)*
David W. Harlan *(Of the Missouri Bar)*
Marc W. Vander Tuig *(Of the Missouri Bar)*
**SENNIGER POWERS**
One Metropolitan Square
16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)
revans@senniger.com
dharlan@senniger.com
mvandertuig@senniger.com

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

II.     SUMMARY OF THE ARGUMENT ................................................. 1

III.    STATEMENT OF FACTS................................................................... 2

IV.     ARGUMENT .......................................................................................... 3

        A.      *Legal Standards* ........................................................................ 3

                1.      Willful infringement ....................................................... 3

                2.      Pleading Requirements ................................................. 3

        B.      *Soitec's Bare Assertions of Willful Infringement are Insufficient* .............. 4

V.      CONCLUSION ....................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)............................................................................... 1, 4, 5

*F5 Networks, Inc. v. A10 Networks, Inc.*,
  No. C07-1927RSL, 2008 WL 687114 (W.D. Wash. Mar. 10, 2008) ............................ 4

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)............................................................................ 3

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007)..................................................................... 1, 3

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)......................................................................... 4

*Wright v. Pepsi Cola Co.*,
  243 F. Supp. 2d 117 (D. Del. 2003).................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 3, 4, 5

Fed. R. Civ. P. 12(e) .................................................................................. 1, 5

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On May 19, 2008, Plaintiffs, S.O.I.TEC Silicon on Insulator Technologies, S.A. and Commissariat À L'Énergie (collectively, "Soitec"), filed Soitec's "Complaint for Patent Infringement" accusing Defendant MEMC Electronic Materials, Inc. ("MEMC") of willfully infringing three patents (D.I. 1).  By stipulated Order, MEMC's response to the Complaint is due by July 9, 2008 (D.I. 6).  In lieu of an Answer, MEMC now moves the Court to dismiss Soitec's Complaint or, in the alternative, require Soitec to provide a more definite statement of its willful patent infringement claims.

## II.    SUMMARY OF THE ARGUMENT

1.    Soitec's bare allegations do not provide information sufficient to notify MEMC of the nature of Soitec's purported willful patent infringement claims and the grounds on which these claims rest as required by recent precedent.  Specifically Soitec's willful infringement assertions, made "on information and belief," provide no basis for finding that MEMC was "objectively reckless," under the controlling standard set forth by the Federal Circuit sitting en banc in *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007).  Soitec thus fails to state a claim for willful patent infringement and its claims should be dismissed under Fed. R. Civ. P. 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

2.    In the alternative, because Soitec's purported willful infringement claims lack the necessary factual allegations, at a minimum, Soitec should be required to file a more definite statement setting forth the specific grounds underlying these claims.  Fed. R. Civ. P. 12(e).

1

### III.    STATEMENT OF FACTS

The Complaint recites no specific facts underlying Soitec's allegations that MEMC purportedly infringes the three patents in suit. Rather, three conclusory allegations of infringement are made "upon information and belief." *See* Compl. (D.I. 1), ¶¶ 14, 18, 22. The Complaint wholly lacks any factual statements or allegations that would allow a reader to conclude that Soitec has any confidence as to claim coverage for these three patents.

Nonetheless, in Counts I, II, and III of Soitec's unusually succinct Complaint, Soitec goes further and alleges *willful* patent infringement. Soitec makes three identical, non-specific, conclusory allegations of willful infringement:

15.    On information and belief, MEMC's infringement of the Bruel Patent is and has been willful.

19.    On information and belief, MEMC's infringement of the '009 Patent is and has been willful.

23.    On information and belief, MEMC's infringement of the '396 Patent is and has been willful.

*See* Compl. (D.I. 1), ¶¶ 15 (Count I alleging willful infringement of U.S. reissue Patent No. 39,484); 19 (Count II alleging willful infringement of U.S. Patent No. 6,809,009); and 23 (Count III alleging willful infringement of U.S. Patent No. 7,067,396). Soitec's Complaint contains no other factual allegations pertaining to MEMC's alleged willful patent infringement.

In the morning on the day that Soitec filed this unsupported Complaint, Soitec issued a press release trumpeting that it had filed this lawsuit against its competitor MEMC. Perhaps it was not coincidental that Soitec issued yet another press release on

the same day with a far less upbeat message—announcing disappointing earnings results for its then recently ended fiscal year.  Ex. 1.

## IV.    ARGUMENT

### A.    Legal Standards

#### 1.    Willful infringement

"[W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007).

Recently, the Federal Circuit significantly raised the bar for patentees alleging willful infringement.  The en banc *Seagate* court set forth a new test that Soitec must satisfy to sustain a claim for willful patent infringement:  "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness . . . . a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371.  And if Soitec establishes this threshold objective standard, then it must further prove, by clear and convincing evidence, that this "objectively-defined risk . . . was either known or so obvious that is should have been known" to MEMC. *Id.*

#### 2.    Pleading Requirements

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint." *Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117, 120 (D. Del. 2003).  While the Court must accept the factual allegations in Soitec's Complaint as true, it "need not credit [the] complaint's 'bald assertions' or 'legal conclusions.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted).

3

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified the pleading requirements by which the sufficiency of Soitec's Complaint must be evaluated. 127 S. Ct. 1955 (2007). Soitec's Complaint must "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also [the] 'grounds' on which the claim rests." *Id.* at 1965. Moreover, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. *See also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (applying *Bell Atlantic* to allegations of patent infringement).

   B.    *Soitec's Bare Assertions of Willful Infringement are Insufficient*

Soitec's conclusory allegations of willful infringement—made "on information and belief"—are insufficient. Specifically, Soitec fails to allege facts suggesting that (1) MEMC acted despite an objectively high likelihood that its actions constituted infringement of any of Soitec's asserted patents, and (2) this objectively-defined risk was either known or so obvious that it should have been known to MEMC. In short, Soitec's conclusory allegations fail to set forth any facts necessary to put MEMC on notice of its alleged acts of willful infringement. This is particularly so where, as here, there are no facts recited to support a conclusion of patent infringement, either.

Wishful pleading such as this lacks the necessary "heft to 'show that the pleader is entitled to relief." *Bell Atlantic Corp.*, 127 S. Ct. at 1966. *See, e.g., F5 Networks, Inc. v. A10 Networks, Inc.*, No. C07-1927RSL, 2008 WL 687114, at *1 (W.D. Wash. Mar. 10, 2008) (finding a patent infringement complaint insufficient  because it did "not contain

4

any facts to support a claim of willful infringement or to put [defendant] on notice of the
grounds on which that claim rests").[1]

Because Soitec fails to allege facts necessary to support a claim for willful patent
infringement, its Complaint should be dismissed for failing to state a claim upon which
relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp.*, 127 S. Ct. at 1966
("So, when the allegations in a complaint, however true, could not raise a claim of
entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum
expenditure of time and money by the parties and the court.'").

Alternatively, if the Court does not dismiss the Complaint, then Soitec should be
ordered to file a more definite statement under Fed. R. Civ. P. 12(e) alleging facts (if any)
with sufficient particularity to fairly apprise MEMC of the ground on which Soitec's
willful infringement claims rest—specifically, the factual allegations underlying Soitec's
basis for claiming that (1) MEMC engaged in the accused conduct despite an objectively
high likelihood that its actions constituted infringement of U.S. Patent Nos. RE39,484;
6,809,009; 7,067,396, and (2) these objectively-defined risks were either known or so
obvious that they should have been known to MEMC.

V.    **CONCLUSION**

Soitec's Complaint does not provide the necessary—or, in fact, *any*—factual
grounds to support its willful infringement allegations against MEMC.  Therefore,
MEMC respectfully requests that the Court dismiss Soitec's claims for willful patent
infringement pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, order Soitec to file

---

[1]Absent sufficient grounds, Soitec should not be permitted to prosecute its willfulness
claim to gain a tactical advantage by forcing MEMC to choose between (1) relying on an
advice of counsel defense and waiving the attorney-client privilege or (2) waiving this
defense and maintaining its privilege.

a more definite statement under Fed. R. Civ. P. 12(e), detailing the specific factual basis

for plaintiffs' claims of willful patent infringement.

Respectfully submitted,

Dated:  July 9, 2008                    CONNOLLY BOVE LODGE & HUTZ LLP

By: *Patricia S Rogowski*

Patricia S. Rogowski (I.D. #2632)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
(302) 658-5614 (Fax)
progowski@cblh.com

Of Counsel:

SENNIGER POWERS LLP
Robert M. Evans, Jr.
David W. Harlan
Marc W. Vander Tuig
Richard L. Brophy
One Metropolitan Square
16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)
revans@senniger.com
dharlan@senniger.com
mvandertuig@senniger.com
rbrophy@senniger.com


*Attorneys for MEMC Electronic Materials, Inc.*

# EXHIBIT 1

## CEA AND SOITEC FILE A PATENT INFRINGEMENT LAWSUIT AGAINST MEMC

GRENOBLE, France — May 19, 2008 — The CEA (French Atomic Energy Commission) and S.O.I.TEC Silicon On Insulator Technologies (Euronext Paris), the world's leading supplier of silicon-on-insulator (SOI) wafers and other engineered substrates used in the microelectronics industry, have announced today that they have filed a patent infringement lawsuit against MEMC Electronic Materials Inc., located in St.Peters, Missouri, United States.

The lawsuit, filed on May 19, 2008 in the United States District Court for the District of Delaware, alleges that MEMC has infringed and is infringing United States Reissue Patent No. RE 39,484 and United States Patents No. 6,809,009, and No 7,067,396, all related to SOI and other technologies. The patents are owned by CEA, and exclusively licensed to S.O.I.TEC.

The CEA and Soitec are seeking a permanent injunction against MEMC's use of the patented technologies and monetary damages for infringement.

**About the CEA:** The CEA (French Atomic Energy Commission), a public organization for technological research, carries out its missions in the domains of energy, information and health technologies, and defense, built on the foundations of a fundamental research at the highest level. Strengthened by the competence of its 15,000 researchers and collaborators, CEA is renowned internationally and constitutes a strong source of original ideas for public authorities, institutions and industries in France and in Europe.
Located in Grenoble, the CEA- Leti division (Electronics and Information Technology Laboratory of CEA) is at the leading edge of European research in microelectronics, microtechnology and nanotechnology. Its workforce is 1200 people; It filed more than 200 patents in 2007 and it hold a portfolio above 1400 patents.. With 30 start-ups created or in the course of creation, it is one of the most important partners of the industrial world .
Instigator of the MINATEC innovative center , CEA-Leti is also one of its principal partners, alongside of the INP Grenoble (Grenoble Institute of Technology) and local authorities. Further information on www.cea.fr

*MINATEC is a registered trademark of the CEA.*

**About the Soitec Group:** The Soitec Group is the world's leading innovator and provider of the engineered substrate solutions that serve as the foundation for today's most advanced microelectronic products. The group leverages its proprietary Smart Cut™ technology to engineer new substrate solutions, such as silicon-on-insulator (SOI) wafers, which became the first high-volume application for this proprietary technology. Since then, SOI has emerged as the material platform of the future, enabling the production of higher performing, faster chips that consume less power.
Today, Soitec produces more than 80 percent of the world's SOI wafers. Headquartered in Bernin, France, with two high-volume fabs on-site, Soitec has offices throughout the United States, Japan and Taiwan, and a new production site in the process of customers' qualification in Singapore.
Two other divisions, Picogiga International (Les Ulis) and Tracit Technologies (Bernin), complete the Soitec Group. Picogiga focuses on delivering advanced substrates solutions, including III-Vs epiwafers and gallium nitride (GaN)-based wafers, to the compound material world for the manufacture of high-frequency electronics and other optoelectronic devices. Tracit, on the other hand, focuses on thin-film layer transfer technologies used to manufacture advanced substrates for power ICs and microsystems, as well as generic circuit transfer technology for applications such as image sensors and 3D-integration. Shares of the Soitec Group are listed on Euronext Paris. For more information, visit *www.soitec.com*.

Soitec, Smart Cut and UNIBOND are trademarks of S.O.I.TEC Silicon On Insulator Technologies.

**For further information, please contact**:

Soitec

Olivier Brice

Investor Relations – Financial Communication

Tel:+33 4 76 92 93 80

olivier.brice@soitec.fr                    # # #





## Soitec announces full year results for 2007-2008

- **Gross margin of 49.6 million Euros, equal to 16.6% of sales**
- **Operating loss of 8.2 million Euros, net loss of 10.0 million Euros**
- **Operating cash flow of 59.4 million Euros and year end cash of 187 million Euros**
- **February scenario for 2008-2009 reiterated**

*Bernin, France, 19ᵗʰ May 2008* – Soitec, the SOI (Silicon-on-insulator) leader, today announced consolidated results for the financial year ending 31ˢᵗ March 2008. Sales for the year of 298.2 million Euros were down by 19.8% in Euros reflecting lower demand and the severe weakness of the US Dollar against the Euro of 9.3% over the year. The reduced sales led to a gross margin of 49.6 million Euros equal to 16.6% of sales compared to 108.1 million Euros and 29.1% of sales for the previous year. In line with guidance the operating loss was 8.2 million Euros, which is 2.7% of sales. Taking into account net interest expense of 1.9 million Euros this results in a net loss of 10.0 million Euros. Operating activities generated 59.4 million Euros of operating cash flow. At the year end the balance sheet was very solid with cash resources of more than 187 million Euros and shareholder funds of 514 million Euros.

| (Euros millions) | 2006-2007 | **2007-2008** |
|---|---|---|
| Sales | 372.0 | **298.2** |
| Gross margin | 108.1 | **49.6** |
| Research & Development | 31.0 | **25.5** |
| SG&A | 28.6 | **32.3** |
| Operating income/(loss) | 48.5 | **(8.2)** |
| Net interest (exp)/inc | 0.3 | **(1.9)** |
| Net income – Group share | 46.2 | **(10.0)** |
| Net earnings per share (Euros – undiluted) | 0.59 | **(0.11)** |

## Sales impacted by weak demand and the continued unfavourable exchange

Total wafer sales for the year were 286.0 million Euros down by 20.3% in Euros or 13.1% at constant exchange. 300mm sales, which represent 72.3% of total wafer sales were lower by only 8.1% at constant exchange. Taking into account the fact that a major client switched all 200mm to 300mm production from August 2007 sales of all other diameters were down by 24.1% at constant currency. Over the year Picogiga recorded sales of 6.1 million Euros down 30% compared to the

previous year, while Tracit more than doubled its sales to 2.1 million Euros. Royalty revenue was 4.0 million Euros.

## Results impacted by reduced sales but solid balance sheet including Singapore investment

Given the manufacturing cost profile and the production capacity installed to service volumes that failed to materialise, margins have been negatively impacted. At the gross margin level the decision to respect contractual selling prices despite the lower volumes combined with costs incurred to perfect internal wafer recycling activity led to materially lower performance. The continuing weakness in the Dollar also had an unfavourable effect. The Singapore fab was successfully completed leading to the initial recognition of around 2.2 million Euros start up costs at the gross margin level. In addition the company decided to write down the value of certain production assets leading to a non cash year end charge of 4.5 million Euros. Overall these effects led to a total reported gross margin of 16.6% of sales. Excluding Singapore and the year end charge, the gross margin was 18.9% of sales in comparison with 29.1% of sales in the prior year.

Net research and development expense was 8.5% of sales. In absolute terms gross expense was broadly similar to the previous year. However the net charge to profit of 25.5 million Euros was 5.5 million Euros below the prior year. This is mainly explained by the fact that part of the grants relating to the NanoSmart$^{TM}$ and Bernin 2010 projects that have been recognised this year refer to gross expenses incurred last year. Operating expenses running rates have been carefully managed. However the full year includes a provision for the settlement of an ongoing legal action. At the operating margin level the company reported an operating loss of 8.2 million Euros equal to a negative margin of 2.7% of sales in line with recent guidance. This is below the prior year's positive reported operating margin of 13.0% of sales, which for comparison purposes falls to 10.8% of sales when restated at the current year's exchange rate.

Net interest costs for the year were 1.9 million Euros leading to a net loss for the year of 10.0 million Euros (Group Share) that is a loss of 11 cents per ordinary share on an undiluted basis. Despite the operating loss, the company generated positive cash flow from operations of 59.4 million Euros. Overall cash balances went down by 120 million Euros because of the investment in Singapore required to complete the construction and equip the fab with sufficient equipment to enable customer qualification. At the year end the balance sheet remains very strong with shareholders' equity of 514 million Euros and available cash of 187 million Euros.

## The Group reiterates its conservative scenario for the financial year 2008-2009

The latest forecast for the first half of the financial year 2008-2009 continues to indicate weak activity and the company anticipates a sequential decline of about 5% for the first quarter at constant exchange. A favourable change to demand depends upon lifting the uncertainty over the ramp up and success of new products launched into key markets and so the company reiterates its decision to adopt a flat sales scenario at constant exchange for the full year 2008-2009. The Group remains focused on the improvement of operational performance and expense reduction whilst maintaining its ability fully to benefit from any positive rebound in activity. Therefore despite the flat sales scenario the objective of improving operating margins is maintained on a like for like basis at constant exchange and before the cost impact associated with the Singapore fab estimated to be around 30 million US Dollars.

## Agenda

The results for the first quarter of the financial year 2008-2009 will be published on 21 July 2008, after the Paris Stock Exchange closes.

## About Soitec:

Soitec is the world's leading supplier of engineered substrates for advanced microelectronics. The Group produces a wide range of advanced materials, especially silicon-on-insulator (SOI) wafers based on its Smart Cut™ technology—the first high-volume application for this proprietary technology. SOI is currently seen as the platform of the future, paving the way to higher-performance, faster, and more economical chips.

Soitec currently produces over 80% of the SOI wafers. Headquartered at Bernin in France, with two high-volume production units on site, Soitec also has offices in the US, Japan, and Taiwan, and a new production site is in the process of customers qualification in Singapore.

The Group has two other divisions: Picogiga International at Les Ulis in Paris and Tracit Technologies in Bernin. Picogiga is specialized in the development and manufacture of engineered substrates, from group III-V epitaxial semiconductor wafers and gallium nitride (GaN) wafers to composite substrates for the manufacture of high-frequency electronics and optoelectronic devices. Tracit is specialized in thin-film layer transfer technologies, used to manufacture engineered substrates for power ICs and microsystems, as well as generic circuit transfer technology for applications such as image sensors and 3D integration. Shares for the Soitec Group are listed on Euronext Paris. More information is available at www.soitec.com

*Smart Cut and UNIBOND are trademarks of S.O.I. TEC Silicon On Insulator Technologies*

**For further information, please contact:**

| Soitec | Soitec |
|---|---|
| Iain Murray | Olivier Brice |
| CFO | Investor Relations – Financial Communication |
| Tel: +33 4 76 92 75 14 | Tel+33 4 76 92 93 80 |
| Email: investors@soitec.fr | Email: olivier.brice@soitec.fr |

## CERTIFICATE OF SERVICE

I, Patricia Smink Rogowski, hereby certify that on this 9th day of July, 2008, I

electronically filed **DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION**

**TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE**

**STATEMENT** with the Court Clerk using CM/ECF which will send notification of such

filing(s) to Denise Seastone Kraft.

**VIA CM/ECF and E-MAIL**
Denise Seastone Kraft
EDWARDS ANGELL PALMER
    & DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
dkraft@eapdlaw.com

**VIA E-MAIL**
George W. Neuner
EDWARDS ANGELL PALMER
    & DODGE LLP
101 Federal Street
Boston, MA 02110
gneuner@eapdlaw.com


    _/s/ Patricia Smink Rogowski_
Patricia Smink Rogowski (Bar ID No. 2632)
progowski@cblh.com

615931v1