## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **S.O.I.TEC SILICON ON INSULATOR TECHNOLOGIES, S.A. and COMMISSARIAT À L'ÉNERGIE ATOMIQUE,**<br><br>          Plaintiffs,<br><br>     v.<br><br>**MEMC ELECTRONIC MATERIALS, INC.**<br><br>          Defendant. | Civil Action No.: 1:08-cv-292-SLR |

## SOITEC'S BRIEF IN OPPOSITION TO MEMC'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

John Reed (No. 3023)
Denise Seastone Kraft (No. 2778)
EDWARDS ANGELL PALMER & DODGE LLP
919 North Market Street
Suite 1500
Wilmington, DE  19801
(302) 425-7106
(888) 325-9741 (fax)

*Attorneys for S.O.I.TEC Silicon On Insulator Technologies, S.A. and Commissariat A L'Energie Atomique*

Dated: July 28, 2008

# <u>TABLE OF CONTENTS</u>

**Page**

I.    Factual Background.................................................................................1

II.   MEMC Has Not Complied With Local Rule 7.1.1..............................................4

III.  The Complaint Alleges a Claim Upon Which Relief May Be Granted. ................................................................................5

IV.   There Is No Reason To Require Soitec to Provide a More Definite Statement As To Willfulness. ................................................7

## TABLE OF AUTHORITIES

Page(s)

CASES

*Bell-Atlantic v. Twombly*,
    2007 U.S. Lexis 5901, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)......................... 5, 7

*In re Seagate*,
    497 F.3d 1360 (Fed. Cir. 2007) ............................................................... 2, 5, 6, 7, 9

*McZeal v. Sprint-Nextel*,
    501 F.3d 1354 (Fed. Cir. 2007) .......................................................................... 5, 7

*Gart v. Logitech, Inc.*,
    254 F.3d 1554, 1347 (Fed. Cir. 2001)...................................................................... 5

STATUTES

35 U.S.C. § 285 ....................................................................................................... 6, 8

RULES

Fed. R. Civ. P. 12(b)(6)........................................................................................4, 5, 6

Fed. R. Civ. P. 12(e) .................................................................................................. 4

Local Rule 7.1.1 ..................................................................................................... 3, 4

OTHER AUTHORITIES

U.S. Patent No. RE 39,484.................................................................................... 2, 4

U.S. Patent No. 5,374,564.............................................................................. 1, 2, 3, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **Factual Background.**

In January 2004, MEMC announced that it had licensed a technology known as the "NanoCleave Process" from Silicon Genesis Corporation ("SiGen"). The NanoCleave Process is a technology for manufacturing a product known as silicon on insulator ("SOI"). Since that time, MEMC has publicly announced that it is using NanoCleave to manufacture SOI at its plant near St. Louis, it has advertised for personnel with the special skills needed to fabricate NanoCleave SOI, it has briefly put up and then taken down a website detailing its NanoCleave methodology, and it has started to compete with Soitec, S.A.

In prior litigation brought by the plaintiffs in this case, S.O.I.T.E.C. Silicon on Insulator Technologies, S.A. and Commissariat à l'Énergie Atomique (collectively, "Soitec"), SiGen was summarily adjudicated to have infringed certain claims of United States Patent 5,374,564 ("the '564 Patent) because it practiced the NanoCleave Process that MEMC is now using. Additionally, a jury later determined that the NanoCleave Process infringed the remaining claim asserted against SiGen. Also in that litigation, the infringed claims of the '564 Patent were adjudicated to have been validly issued and enforceable with respect to challenges under sections 102 and 103 of the Patent Act, the definiteness requirement of Section 112 of the Patent Act, and with respect to allegations that the patent was obtained by inequitable conduct. All of those determinations and the claim constructions which underlay them have been final since well before MEMC began practicing the NanoCleave Process, in that they were either never appealed or they were affirmed by the Federal Circuit.

At the Soitec-SiGen trial, certain claims of the '564 Patent were invalidated under the enablement doctrine, a result which was also affirmed on appeal. All of the invalidated claims, however, were resubmitted to the patent office in amended form and the '564 Patent was eventually reissued by the PTO as U.S. Patent No. RE 39,484 (the "RE484 Patent") in February 2007. The amendments required to secure reissue of the invalidated claims do not bear in any way on the question of whether the NanoCleave Process continues to infringe the now reissued RE484 Patent.

In short, the manufacturing process that MEMC uses to make SOI has been adjudicated by a court of law to infringe patent claims that have been determined by a U.S. District Court, the Federal Circuit, and/or the PTO to be valid and enforceable. That is why Soitec sued MEMC, and it explains why there is "an objectively high likelihood that [MEMC's] actions" in practicing the NanoCleave process "constitute[ ] infringement of a valid patent." *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

MEMC is intimately familiar with all of this. As a result, the "objectively defined risk" that it ran in practicing the NanoCleave Process "was either known or so obvious that it should have been known" by MEMC. *Id.* For one thing, the due diligence that MEMC presumably performed in becoming a licensee of SiGen would have uncovered these patents and their litigation and prosecution histories. Further, any supplier in the silicon industry typically is required to assure its potential customers that its product is free from intellectual property encumbrances. Indeed, the potential customers for MEMC's SOI products are highly sophisticated purchasers who are themselves familiar with these events and who would insist that MEMC investigate the applicability of the RE484 Patent claims to MEMC's NanoCleave wafers.

In addition MEMC has been trying unsuccessfully to enter the SOI market for roughly 15 years and, since 1996, has intermittently discussed with Soitec possible licensing, supply, joint venture, and acquisition possibilities. As part of these ongoing discussions, MEMC presumably has become knowledgeable about the Soitec patent portfolio that it has repeatedly sought to license. Indeed, MEMC only turned to SiGen's NanoCleave Process after Soitec's rebuff to MEMC's most recent request for a license to Soitec's patented Smart-Cut$^{TM}$ technology.

Finally, during the pendency of the reissue patent application, when MEMC publicly announced its intent to make SOI using the infringing NanoCleave Process, Soitec explicitly notified MEMC that reissue of the invalidated claims had been requested. *See* Exhibit A attached hereto, February 11, 2004 notice from Soitec to MEMC. Aware of the risk posed by the reissue application, MEMC and SiGen intervened in the reissue proceeding, hoping to preclude approval of the amended claims. MEMC and SiGen were unsuccessful, however, and the PTO approved claims which are substantively identical to the original claims with respect to their applicability to the NanoCleave Process. The reissue of the '564 Patent is widely known in the SOI industry including, Soitec believes, to MEMC. Undeterred, MEMC has continued to make and market silicon on insulator products fabricated using the infringing NanoCleave Process.

Now, after asking for a 30-day extension to answer or otherwise plead, without even pretending to comply with the meet and confer requirements of Local Rule 7.1.1,

MEMC has brought this motion, claiming that it is clueless as to why Soitec might think that it has willfully infringed the RE484 Patent.[1]

## II.    MEMC Has Not Complied With Local Rule 7.1.1.

Local Rule 7.1.1 requires a meet and confer as to all nondispostive motions. MEMC does not allege that it sought to comply with the requirement for the very simple reason that MEMC ignored this Local Rule. Presumably, MEMC will argue that it was excused from its meet and confer obligation because its motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and is therefore dispositive. However, at most, the motion seeks dismissal of Soitec's plea for enhanced damages.

A plea for a particular type of relief – here, an award of enhanced damages – is not itself a "cause of action." Moreover, even as to this portion of the prayer for relief, the motion specifically requests the nondispositive relief of a more definite statement under Rule 12(e).

This is a classic case where merely picking up the telephone could have saved both the parties and the Court from needless motion practice. As can be seen from the foregoing, there is no secret about the basis for Soitec's allegations, and a reasonable disclosure arrangement presumably could have been negotiated. Since, however, MEMC elected not to practice the time honored and rule-mandated philosophy of "phone first," we turn to the merits of this motion.

---

[1]    MEMC's infringement of the two other patents at issue in this case – U.S. Patent Nos. 6,809,009 and 7,067,396 – is also alleged to be willful. These patents essentially cover a variation of the RE484 Patent Process in which a technique known as "mechanical cleaving" is practiced. NanoCleave is a mechanical cleaving process. The '396 issued from a continuation of the '009 patent. The application for '009 patent was published before MEMC took its NanoCleave license and issued shortly thereafter. Accordingly, most of the reasons given above as to why MEMC knew or should have known that there can be no objectively reasonable basis for disputing that the RE484 Patent is valid and infringed, apply equally to the '009 and '396 Patents, which were issued by the PTO after full disclosure of all of the attacks leveled against the RE484 Patent and its predecessor '564 Patent.

**III.    The Complaint Alleges a Claim Upon Which Relief May Be Granted.**

Rule 12(b)(6), under which MEMC moves, provides a method for challenging the allegations of a complaint which "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For decades, the model form for a patent complaint has been the pleading set forth in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. FORM 16 (2006). In *McZeal v. Sprint-Nextel*, 501 F.3d 1354, 1355-1359 (Fed. Cir. 2007), the Federal Circuit specifically held that FORM 16 meets the pleading standard set forth by the Supreme Court in *Bell-Atlantic v. Twombly*, 2007 U.S. Lexis 5901, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007). Soitec's complaint in this case tracks FORM 16 and is therefore amply sufficient to withstand a Rule 12 challenge.

More specifically, Soitec's complaint alleges three counts of "patent infringement" by pleading jurisdiction, the patents which Soitec believes to be infringed, Soitec's exclusive rights and CEA's ownership of these patents, and the conduct of MEMC which Soitec believes to be infringing. (Complaint (D.I. 1), ¶¶ 5, 10-12, 14, 18, and 22).[2] This is sufficient under the Federal Rules to state a claim for patent infringement, as it gives MEMC sufficient basis on which to admit or deny the allegations. *McZeal*, 501 F.3d at 1357. Notably, notwithstanding a slightly grumpy characterization of Soitec's allegations as "unusually succinct," MEMC Br. (D.I. 11), at

---

[2]        Soitec's complaint does not explicitly plead prior notice, which goes to damages, and is not a substantive element of the infringement claim. As MEMC itself points out, the allegations of willfulness (Complaint (D.I. 1), ¶¶ 15, 19, and 23) are *de facto* allegations that MEMC knew or should have known that it was infringing the Soitec valid patents, MEMC Br. (D.I. 11), at 3, quoting *Seagate*, 497 F.3d at 1371. Regardless, however, of what one takes from the willfulness allegations, it is clear that notice of an infringement claim is provided by the filing and service of the complaint itself. *See, e.g., Gart v. Logitech, Inc.*, 254 F.3d 1554, 1347 (Fed. Cir. 2001). (upholding finding of notice as to certain accused products as of the filing of complaint).

2,[3] nothing in MEMC's motion questions the adequacy of Soitec's substantive infringement allegations.

Rather, MEMC contends that Soitec has failed to adequately plead a "claim upon which relief can be granted" because Soitec purportedly fails to plead "a claim for willful patent infringement." MEMC Br. (D.I. 11), at 1, 5. Soitec's complaint, however, does not seek to state a cause of action for "willful patent infringement," for the very good reason that no such cause of action exists. As this Court is well aware, once patent infringement is proven, compensatory damages may be enhanced upon a showing that the case is an exceptional one, 35 U.S.C. § 285, and one basis for such a showing may be proof of willful infringement. *Seagate*, 497 F.3d at 1368. To that end, as is explicit in the Complaint, Soitec has alleged that MEMC's infringement is willful (¶¶ 15, 19, and 23) and has requested enhanced damages under Section 285 (PRAYER FOR RELIEF, ¶¶ (d), (e), and (h)).

For the reasons discussed below, Soitec has adequately pled the willfulness of MEMC's infringement but, leaving that to one side, a failure to plead the predicate for judicial enhancement of damages is not a failure to state a cause of action, and Federal Rule of Civil Procedure 12(b)(6) is simply inapplicable. Indeed, Soitec's pleading in this regard is more than sufficient. By way of comparison, in a recently concluded case, MEMC's May 2006 Counterclaim for Patent Infringement against Soitec sought enhanced damages under § 285, See Exhibit B, at 9-10, but omitted to plead any theory as to why it viewed the case as "exceptional" – not even deigning to allege on

---

[3]    Although it is possible that MEMC is not familiar with the equally laconic Federal Rules Form, it is somewhat hard to credit MEMC's umbrage in light of its own "succinct" counterclaim for patent infringement and willfulness against Soitec in recently concluded litigation between the parties. *See* Exhibit B attached hereto, Answer to (Corrected) First Amended Complaint and Counterclaim for Patent Infringement, Case No. 05-806-KAJ (D. Del.), at 9-10.

"information and belief" that Soitec's infringement was willful – let alone any of the facts

underlying that non-allegation.  *See* Exhibit B, at 9-10.

**IV.    There Is No Reason To Require Soitec to Provide a More Definite Statement As To Willfulness.**

The principal thrust of MEMC's motion is that Soitec should be required to plead

the willfulness of MEMC's infringement with greater factual particularity.  There is no

question, however, that the Complaint puts MEMC on notice of what patents Soitec

believes to be infringed and by what conduct.   Soitec's additional allegation that

MEMC's infringement is willful imports the applicable legal standard of proof set forth

in *Seagate.*

The Federal Circuit's test for whether allegations meet the *Twombly* pleading

standard is whether the "complaint contains enough detail to allow the defendants' to

answer."  *McZeal*, *supra*, 501 F.3d at 1357.  Surely, if MEMC is in a position to admit or

deny whether it has infringed valid and enforceable patents, it is in a position to admit or

deny whether it has done so willfully.  That is, if MEMC is going to deny infringement or

contest validity or enforceability, it necessarily is going to deny willful infringement.  If it

is going to admit infringement, validity, and enforceability, the issue comes down to the

recklessness of MEMC's admitted conduct, a fact which MEMC is surely in a position to

admit or deny.  For the narrow purpose of joining issue at the pleading stage, nothing

more is required.

If, in addition, MEMC wants to learn the factual basis for Soitec's allegations,

MEMC has access to the full panoply of discovery devices to elicit that information,

beginning the minute that the parties' Rule 16 conference is concluded.   Ultimately,

MEMC is free to test the  basis for those allegations by motion if it sees fit to do so.

Whether the allegations of Soitec's complaint are terse or verbose, these procedural options will be available to MEMC.

On the other hand, if the standard is going to be the sort of factual pleading that MEMC now requests, then either pro forma allegations of objective recklessness will suffice or particularized factual allegations will be required.

If the former, it is unclear why anyone is better off for Soitec's having pled the verbal formula urged by MEMC (*i.e.*, "MEMC knew or should have know that there is an objectively high likelihood that it has infringed one or more valid and enforceable claims of Soitec's patents.") rather than the verbal formula actually pled (namely, Soitec's allegation of the ultimate fact that MEMC's infringement was "willful.")

If particularized factual pleading is required, the inevitable question will immediately become, "How much is enough?"  As a result, MEMC's proposed rule will invite a new round of pleadings motions, arguing the sufficiency of the facts pled to support Section 285 enhancement.[4]  That in turn will generate, at best, another round of briefing and, at worst, another round of amendments.  By the time that the parties actually get to discovering the facts and preparing the case for trial, six months will have passed and this Court's time will have been wasted with multiple preliminary motions, none of which have anything to do with the underlying and indisputably adequate substantive claims pled by this Complaint.

---

[4]      The likely flash points are easy to foresee:  Is the "objective" recklessness of the infringement really that clear, or could reasonable people differ?  What sort of notice counts as actual knowledge?  When should a defendant truly have known of its infringement, and when is it merely negligent?  Such issues necessarily will be part of the ultimate determination of willfulness, but it is hard to see what purpose is served by litigating them at the pleadings stage, rather than after discovery has permitted the parties to develop a full factual record.

The Federal Circuit's *Seagate* decision is less than a year old. It addressed the standard of proof in willfulness cases. Any remarks about pleadings are mere *dicta*. Courts reviewing willfulness pleadings in *Seagate's* wake have the option of treating *Seagate* as a useful and self-executing brake on frivolous allegations of willful infringement or as a font of pleadings disputes that will only bog down patent litigation with satellite controversies. Soitec respectfully urges the Court to resist MEMC's invitation to adopt the latter course of conduct, to deny this motion, and to require MEMC to answer or otherwise plead within 10 days of any order disposing of this motion. In the alternative, if the Court decides that more particular facts should be plead, Soitec prays for leave to file an Amended Complaint.

Dated: July 28, 2008                                   EDWARDS ANGELL PALMER & DODGE LLP


                                                        _/s/ Denise Seastone Kraft_
                                                       John Reed (No. 3023)
                                                       Denise Seastone Kraft (No. 2778)
                                                       919 North Market Street, Suite 1500
                                                       Wilmington, DE  19801
                                                       (302) 425-7106
                                                       (888) 325-9741 (fax)

Of Counsel:
George W. Neuner (BBO No. 369640)
Alan M. Spiro (BBO No. 475650)
Brian M. Gaff (BBO No. 642297)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 439-4444
(617) 439-4170 (fax)

Michael Brody
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Gail Standish
Ashlea Raymond
WINSTON & STRAWN
333 South Grand Avenue
Los Angeles, California, 90071
(213) 615-1700

Marcus Hall
WINSTON & STRAWN
101 California Street
San Francisco, California 94111
(414)591-1000

Jason Charkow
WINSTON & STRAWN
200 Park Avenue
New York, NY 10166
(212)294-6700

# Exhibit A



**Soitec**

Soitec
Parc Technologique
des Fontaines
38190 Bernin - France
Adresse postale :
38926 Crolles Cedex

Tél. : 33 (0)4 76 92 75 00
Fax : 33 (0)4 76 92 75 70
www.soitec.com

S.O.I.TEC
S A au capital de
4 267 520 €
384 711 909
RCS Grenoble
Code APE 321 B

Nabeel GAREEB
President and CEO
MEMC
501 Pearl Drive
ST PETERS, MO 63376
United States

February 11, 2004

Dear M. Gareeb,

I am writing to you in connection with the recent announcements in the press to the effect that your Company intends to commence preparation of silicon on insulator (SOI) and strained silicon on insulator (sSOI) wafers under a license from Silicon Genesis.

On May 30, 2003, the Commissariat à l'Energie Atomique (CEA), assignee of United States patent 5,374,564 for the transfer of thin films of semiconductor material (the "564 Patent") has filed with the United States Patent and Trademark Office ("PTO") a request for re-issuance of this patent. This request was published in the PTO Official Gazette on August 5, 2003. Upon successful completion of this re-issuance procedure, CEA will have obtained a new patent with claims more specifically covering subject matter previously recited in the claims of the original patent and of the French priority application.

We are of the view that your Company should take this situation into consideration in connection with any further steps that it may take towards the production of SOI, sSOI or other similar devices by layer transfer methods.

Please do note hesitate to contact me should you have any questions with regard to the foregoing.

Yours sincerely.

Emmanuel HUYGHE
Industrial Property Manager

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.O.I.TEC SILICON ON INSULATOR TECHNOLOGIES S.A. and SOITEC USA, INC., | |
| Plaintiffs/ Counterclaim Defendants, | JURY TRIAL DEMANDED Civil Action No.: 05-806-KAJ |
| v. | |
| MEMC ELECTRONIC MATERIALS, INC., | |
| Defendant/ Counterclaim Plaintiff. | |

## ANSWER TO (CORRECTED) FIRST AMENDED COMPLAINT
## AND COUNTERCLAIM FOR PATENT INFRINGEMENT

Defendant/Counterclaim Plaintiff MEMC Electronic Materials, Inc. (hereinafter

"MEMC") Answers the (Corrected) First Amended Complaint ("First Amended Complaint") of

Plaintiffs/Counterclaim Defendants' S.O.I.TEC Silicon on Insulator Technologies S.A. and

Soitec USA, Inc. (hereinafter collectively "Soitec") as follows:

1.    MEMC admits that Soitec has a reputation for making and selling SOI products.

MEMC is without knowledge or information sufficient to form a belief as to the truth of the

remaining averments contained in paragraph 1 and, therefore, denies same.

2.    MEMC admits the averments contained in paragraph 2.

3.    MEMC admits the averments contained in paragraph 3.

4.    MEMC admits the averments contained in paragraph 4.

5.    MEMC admits the averments contained in paragraph 5.

6.      MEMC admits this Court has subject matter jurisdiction over the First Amended Complaint.  MEMC denies any remaining averments contained in paragraph 6.

7.      MEMC admits that venue is proper in this judicial district.   MEMC denies any remaining averments contained in paragraph 7.

8.      MEMC admits the first and third sentences of paragraph 8.  MEMC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 8 and, therefore, denies same.

9.      MEMC admits that Exhibit 1 is a copy of a letter dated October 14, 2004 sent from Dr. Shaker Sadasivam of MEMC to Mr. Emmanuel Huyghe of Soitec and that the terms of the letter speak for themselves.  MEMC denies any remaining averments contained in paragraph 9.

10.     MEMC admits the first sentence in paragraph 10.  MEMC admits that the respective priorities for the '827, '302, '672 and '380 patents each include, at least, a priority claim as to U.S. Provisional Application No. 60/041,845, filed on April 9, 1997.  MEMC further admits that the '827 patent was issued subject to a terminal disclaimer.  MEMC denies the remaining averments contained in paragraph 10.

11.     MEMC admits that the '901 patent was issued to MEMC on February 1, 2005. MEMC admits that the respective priorities for the '901, '104 and '725 patents each include, at least, a priority claim as to U.S. Provisional Application No. 60/098,902, filed on September 2, 1998.  MEMC admits that the '901 patent was issued subject to a terminal disclaimer.  MEMC denies any remaining averments contained in paragraph 11.

12.     MEMC admits that Exhibit 2 to the Complaint is a copy of a letter dated October 21, 2005 from MEMC's Vice President and General Counsel to Soitec, and that the terms of this letter speak for themselves.  MEMC denies the remaining averments contained in paragraph 12.

13.     MEMC admits that Exhibit 3 is a copy of an email sent from Soitec's General Counsel to MEMC's Vice President and General Counsel dated November 11, 2005, and that the terms of the email speak for themselves.  MEMC denies any remaining averments contained in paragraph 13.

14.     MEMC admits that Exhibit 4 is a copy of an email sent from MEMC's Vice President and General Counsel to Soitec's General Counsel dated November 18, 2005, and that the terms of the email speak for themselves.  MEMC denies any remaining averments contained in paragraph 14.

15.     MEMC admits that that this Court has subject matter jurisdiction over the First Amended Complaint.  MEMC denies any remaining averments contained in paragraph 15.

16.     MEMC admits that the parties reached an agreement concerning the six patents identified in paragraph 16 and that the terms of that agreement speak for themselves.  MEMC further admits that no agreement was reached with respect to the '104 patent.  MEMC admits the last sentence in paragraph 16.  MEMC denies any remaining averments contained in paragraph 16.

17.     MEMC admits the averments contained in paragraph 17.

18.     MEMC admits that that this Court has subject matter jurisdiction over the First Amended Complaint.  MEMC denies any remaining averments contained in paragraph 18.

19.     MEMC admits the averments contained in paragraph 19.

3

## COUNT I

20.    MEMC incorporates herein by reference each of its answers to the averments contained in paragraphs 1 through 19 of the First Amended Complaint as set forth above. MEMC denies any remaining averments contained in paragraph 20.

21.    MEMC denies the averments contained in paragraph 21.

## COUNT II

22.    MEMC incorporates herein by reference each of its answers to the averments contained in paragraphs 1 through 21 of the First Amended Complaint as set forth above. MEMC denies any remaining averments contained in paragraph 22.

23.    MEMC denies the averments contained in paragraph 23.

## COUNT III

24.    MEMC incorporates herein by reference each of its answers to the averments contained in paragraphs 1 through 23 of the First Amended Complaint as set forth above. MEMC denies any remaining averments contained in paragraph 24.

25.    MEMC admits that a copy of the '104 patent was attached to the First Amended Complaint as Exhibit 5 and that the '104 patent contains claim language having a legal meaning and scope to be determined by this Court following a *Markman* Hearing. MEMC denies that it has made public pronouncements or pronouncements in other lawsuits concerning the claim scope of the '104 patent. MEMC admits that the Czochralski grown CZ silicon donor wafer used by Soitec in deriving its device layers is substantially free of crystal originated particle defects (to the extent of MEMC's testing of donor wafers to date) such that the resulting SOI product is covered by Claims 1, 9 and 10 of the '104 patent. MEMC denies any remaining averments contained in paragraph 25.

4

26.    MEMC is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 26 and, therefore, denies same.

27.    MEMC is without knowledge or information sufficient to form a belief as to the trust of the averments contained in paragraph 27 and, therefore, denies same.

28.    MEMC is without knowledge or information sufficient to form a belief as to the trust of the averments contained in paragraph 28 and, therefore, denies same.

29.    MEMC admits that MEMC and Soitec discussed entering into a commercial relationship and that discussion points included various terms not relevant to this lawsuit. No agreement was ever reached for such a relationship. MEMC denies the remaining averments contained in paragraph 29.

30.    MEMC admits that Dr. Robert Falster is the sole named inventor on the '104 patent and is a leading material scientist at MEMC. MEMC admits that Mr. André-Jacques Auberton-Hervé, the Chief Executive Officer of Soitec, had a conversation with Dr. Falster and discussed Soitec's UNIBOND wafers. MEMC is without knowledge or information sufficient to form a belief at to the truth of the averments contained in the remaining averments of paragraph 30 and, therefore, denies same.

31.    MEMC admits that Mr. Auberton-Hervé and Dr. Falster, along with others, had a meeting during which Soitec discussed the problems it was having with its UNIBOND wafers. MEMC denies that Mr. Auberton-Hervé jointly conceived any invention claimed in the '104 patent. Rather, prior to the meeting, Dr. Falster had conceived of the idea of using his wafers containing axially symmetric regions of silicon substantially free of agglomerated intrinsic point defects as the donor wafer to derive the device layer for SOI structures. As such, Dr. Falster's conception of making silicon on insulator structures comprising a handle wafer, an Agglomerate

Free Device Layer, and an insulating layer between the handle wafer and the device layer was complete prior to the October 30, 1996 meeting. MEMC denies any remaining averments contained in paragraph 31.

32.    MEMC admits that Soitec and MEMC did not enter into a business partnership. MEMC is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in paragraph 32 and, therefore, denies same.

33.    MEMC is without knowledge or information sufficient to form a belief as to the trust of the averments contained in paragraph 33 and, therefore, denies same.

34.    MEMC is without knowledge or information sufficient to form a belief as to the trust of the averments contained in paragraph 33 and, therefore, denies same.

35.    MEMC denies the averments contained in paragraph 35.

## COUNT IV

36.    MEMC incorporates herein by reference each of its answers to the averments contained in paragraphs 1 through 35 of the First Amended Complaint as set forth above. MEMC denies any remaining averments contained in paragraph 36.

37.    MEMC denies the averments contained in paragraph 37.

38.    MEMC denies the averments contained in paragraph 38(a). MEMC denies that United States Patent No. 5,919,302 is material prior art to the '104 patent. MEMC states that an analog to the '302 patent containing the same specification was cited to the patent office during prosecution of the '104 patent. MEMC admits that Dr. Falster, MEMC, and the attorneys who prosecuted the '104 patent had knowledge of the '302 patent. MEMC further states that the '302 patent and the '104 patent were commonly assigned at all relevant times. MEMC denies any remaining averments contained in paragraph 38(b). MEMC denies that thermal treatments were

known in the prior art to dissolve or annihilate agglomerated intrinsic point defects in CZ silicon

subsequent to their formation. MEMC admits that it was known in the prior art to use epitaxial

deposition to make a thin crystalline layer of silicon on the surface of a CZ silicon wafer where

just the surface layer was substantially free of agglomerated intrinsic point defects. MEMC

denies that silicon produced by the epitaxial prior art technique is "substantially identical" to the

silicon disclosed in the '302 and '104 patents. MEMC denies the remaining averments contained

in paragraph 38(c). MEMC denies any remaining averments contained in paragraph 38.

     39.    MEMC denies that it knowingly withheld any material facts or prior art from the

PTO during the prosecution of the '104 patent. MEMC denies that Auberton-Hervé has any

claim of co-inventorship to the '104 patent. MEMC denies that it had any obligation to advise

the patent office of such non-existent claim. MEMC denies that the commonly assigned '302

patent is material prior art to the '104 patent. MEMC states that it cited prior art to the United

States Patent Office during prosecution of the '104 patent which disclosed the use of epitaxial

layers for the device layer in an SOI structure. MEMC denies the asserted "substantial identity"

set forth in paragraph 39(c). MEMC denies any remaining averments contained in paragraph 39.

     40.    MEMC admits that it has issued press releases and that the terms of those press

releases speak for themselves. MEMC admits that its perfect silicon, when used as a donor

wafer in deriving a device layer for an SOI structure creates an SOI structure covered by the '104

patent. MEMC denies that Auberton-Hervé has any claim to co-inventorship of the '104 patent.

MEMC denies any remaining averments contained in paragraph 40.

     41.    MEMC admits that a copy of the '104 patent was attached as Exhibit 5 to the First

Amended Complaint and that a copy of the '302 patent was attached to the original Complaint

filed by Soitec in this matter. As seen from the plain text of these two patents, there is some

common text. None of this common text is material to the validity, infringement and/or enforceability of the '104 patent. MEMC denies that the '302 patent discloses that Prior Art Silicon is substantially identical to MEMC Silicon--indeed they are not substantially identical. MEMC denies that the '302 patent is material prior art to the prosecution of the '104 patent. MEMC denies any requirement or duty to file the '104 patent as a continuation in part of the '302 application. MEMC denies any attempt to mislead the examiner as to the patentability of one or more of the inventions claimed in the '104 application. MEMC admits that the prior art about which Soitec purportedly complains was, in fact, cited to the patent office. MEMC denies Soitec's assertion that MEMC "buried" any prior art. MEMC denies making any disclosure in a misleading manner, and MEMC denies any attempt to deceive the examiner as to the patentability of any invention claimed in the '104 application. MEMC denies any remaining averments contained in paragraph 41.

### AFFIRMATIVE DEFENSES

42.    U.S. Patent No. 6,236,104 is valid pursuant to 35 U.S.C. §§101, 102, 103 and 112.

43.    Soitec directly and indirectly infringes the '104 patent.

44.    Soitec's inventorship claims and related unenforceability claims are barred under the doctrine of laches.

45.    Soitec is equitably estopped from asserting its inventorship claims and related unenforceability claims.

46.    The First Amended Complaint fails to state a claim upon which relief can be granted.

## COUNTERCLAIM FOR PATENT INFRINGMENT

47. This Counterclaim arises under the patent laws of the United States. This Court has subject matter jurisdiction over this Counterclaim under 28 U.S.C. Sections 1331 and 1338(a).

48. Venue for this Counterclaim is proper in this judicial district under 28 U.S.C. Sections 1391(c).

49. MEMC is a corporation organized and in good standing under the laws of Delaware. MEMC has a principal place of business in St. Peters, Missouri.

50. Upon information and belief, S.O.I.TEC Silicon on Insulator Technologies S.A. is organized under the laws of France and has a principal place of business in Bernin, France. Upon information and belief, Soitec USA, Inc. is a wholly owned subsidiary of S.O.I.TEC Silicon on Insulator Technologies S.A. and is a corporation organized under the laws of the Commonwealth of Massachusetts and has a principal place of business in Peabody, Massachusetts. These two Soitec entities are herein collectively referred to as "Soitec."

51. On May 22, 2001, the '104 patent was duly and legally issued to MEMC for an invention entitled, "Silicon on Insulator Structure From Low Defect Density Single Crystal Silicon." At all times since issuance of the '104 patent, MEMC has been and still is the owner of this patent, with the sole right to sue and recover for its infringement.

52. Upon information and belief, Soitec has been and still is infringing, actively inducing infringement of, and knowingly contributing to the infringement of the '104 patent, by making, using, offering to sell, selling and/or importing silicon on insulator structures covered by claims of the '104 patent in the United States in violation of 35 U.S.C. Section 271. Soitec will continue to do so unless enjoined by the Court.

9

53. MEMC has been damaged by Soitec's infringement of the '104 patent and will continue to be damaged by such infringement in the future unless such infringement is enjoined by the Court.

WHEREFORE, MEMC respectfully prays that this Court enter an Order providing that:

(a)    the '104 patent is not invalid under 35 U.S.C. Sections 101, 102, 103 and 112;

(b)    Soitec has infringed one or more claims of the '104 patent;

(c)    Soitec, and each of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be permanently enjoined from further infringement of the '104 patent;

(d)    MEMC be awarded damages in an amount to be determined at trial;

(e)    MEMC be awarded pre-judgment and post-judgment interest;

(f)    judgment be entered against Soitec on each of Counts I - IV of the First Amended Complaint, and that Soitec take nothing by it;

(g)    this is an exceptional case, pursuant to 35 U.S.C. §285, and awarding MEMC enhanced damages, reasonable attorney's fees, expenses and costs in this action; and

(h)    MEMC be granted such other and further relief as the Court deems just and proper in the premises.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38, MEMC demands a trial by jury on all

issues so triable.

Dated: May 19, 2006                    CONNOLLY BOVE LODGE & HUTZ LLP


                                       By:  */s/ Paul E. Crawford*
                                            Paul E. Crawford (I.D. #493)
                                            Patrician S. Rogowski (I.D. #2632)
                                            The Nemours Building
                                            1007 North Orange Street
                                            P.O. Box 2207
                                            Wilmington, DE 19899
                                            (302) 658-9141
                                            (302) 658-5614 (Fax)
                                            pcrawford@cblh.com
                                            progowski@cblh.com

                                       *Attorneys for MEMC Electronic Materials, Inc.*


**OF COUNSEL:**

Robert M. Evans, Jr. *(Of the Missouri Bar)*
David W. Harlan *(Of the Missouri Bar)*
Marc W. Vander Tuig *(Of the Missouri Bar)*
**SENNIGER POWERS**
One Metropolitan Square
16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)

## CERTIFICATE OF SERVICE

I, Paul Crawford, hereby certify that on this 19th day of May, 2006, I electronically filed

the **ANSWER TO (CORRECTED) FIRST AMENDED COMPLAINT AND**

**COUNTERCLAIM FOR PATENT INFRINGEMENT** with the Court Clerk using CM/ECF

which will send notification of such filing(s) to John L. Reed.   I hereby further certify that on

this 19th day of May, 2006, I have served this document on the attorneys of record at the

following addresses as indicated:

**VIA HAND DELIVERY**
John L. Reed
Denise Seastone Kraft
EDWARDS ANGELL PALMER
    & DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

**VIA U.S. MAIL**
George W. Neuner
Robert J. Tosti
Alan M. Spiro
Brian M. Gaff
EDWARDS ANGELL PALMER
    & DODGE LLP
101 Federal Street
Boston, MA 02110


Michael Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601


_/s/ Paul E. Crawford_
Paul E. Crawford (#493)

## <u>CERTIFICATE OF SERVICE</u>

I, Denise Seastone Kraft, hereby certify that on this 28th day of July, 2008, a true

and correct copy of the foregoing **SOITEC'S BRIEF IN OPPOSITION TO MEMC'S**

**MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR A MORE DEFINITE**

**STATEMENT** was electronically filed with the Clerk of the Court using the CM/ECF

system and a copy was served upon the following counsel of record in the manner

indicated:

**<u>VIA HAND DELIVERY and CM/ECF</u>**

Patricia Smink Rogowski, Esquire
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

_/s/ Denise Seastone Kraft_
Denise Seastone Kraft (No. 2778)

WLM 514324.1